UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIFFANY WASHINGTON,

   *Plaintiff*,

  v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

   *Defendant*.

Civil Action No. 1:20-cv-01396 (CJN)

## MEMORANDUM OPINION

  Tiffany Washington worked as a police officer for the Washington Metropolitan Area Transit Authority from September 24, 2001, until her termination on April 5, 2019. Compl. ¶ 11, ECF No. 1. She was diagnosed with a disability that affects her "sleep, cognitive abilities, concentration, anxiety, work efficiency, and focus." *Id.* ¶ 204. Between 2016 and 2019, Washington submitted at least three EEO complaints for alleged harassment, discrimination, and retaliation. *Id.* ¶¶ 15–19. On May 26, 2020, she filed this action against WMATA, alleging sexual harassment, gender discrimination, racial discrimination, retaliation, and disability discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII), and the Rehabilitation Act of 1973. *See generally* Compl. Pending before the Court is WMATA's Motion to Dismiss or, in the alternative, for Summary Judgment. *See generally* Def.'s Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., ECF No. 5. Because Washington's claims are untimely, the Court grants WMATA's Motion to Dismiss.

1

## I. Background

Washington's Complaint formally lists five counts: four Title VII claims (for sexual harassment, gender discrimination, racial discrimination, and retaliation) and a claim for disability discrimination and denial of reasonable accommodation under Title VII and the Rehabilitation Act. Compl. ¶¶ 146–209. Her Complaint also nods at potential GINA and ADA claims, but she declines to address WMATA's arguments regarding those claims, Pl.'s Mem. Supp. Opp'n to Def.'s Mot. at 6, ECF No. 7 ("Pl.'s Opp'n"), which she instead refers to as "[c]laims not raised by plaintiff," Pl.'s Opp'n at 6.

The Complaint describes a multitude of events that occurred between 2015 and 2019. *See generally* Compl. The Court has tried to discern and summarize her allegations with as much clarity as possible. As relevant here, Washington alleges that (1) she was sexually harassed by various coworkers between February and May 2016, *id.* ¶ 20; (2) later that year, she was retaliated against for reporting that harassment, *id.* ¶ 37; (3) up until her termination on April 5, 2019, the chief of the Metro Transit Police Department, retaliated against her for reporting his discriminatory and harassing conduct regarding her disability, *id.* ¶¶ 43–45; (4) between November 30, 2017, and May 30, 2018, WMATA interfered with her use of family medical leave, *id.* ¶¶ 52–76; (5) in April 2018, she was forced to take a fit-for-duty exam without notice and was relieved of her firearm even though no restrictions had been placed on her, *id.* ¶¶ 77–87; (6) in August 2018, her request to extend her limited duty assignment was denied but other employees' similar requests were granted, *id.* ¶¶ 88–91; (7) between November 2016 and November 2018, she was subjected to a hostile work environment, *id.* ¶¶ 92–111; (8) in November 2018, her request to work evenings while receiving medical treatment was denied, but another employee was allowed to work evenings, *id.* ¶¶ 112–120; (9) between January 2019 and March 2019, she was wrongfully

medically disqualified as a police officer, *id.* ¶¶ 121–133; and (10) she was wrongfully terminated on April 5, 2019, *id.* ¶¶ 134–45.

As required before bringing civil actions under Title VII or the Rehabilitation Act, Washington first filed EEOC charges to report the various incidents described in her Complaint. Compl. ¶¶ 15–19. She submitted three administrative charges; only the second and third charges are relevant here. *Id.* Washington filed her second EEOC charge in October 2018; it alleged discrimination on the basis of race, sex, and disability, as well as retaliation. Compl. ¶ 18; Def.'s Mot. Ex. 2d Charge, ECF No. 5-8 ("2d Charge"). She amended that charge on April 25, 2019, to add a claim for wrongful termination. Compl. ¶ 19; 2d Charge. After evaluation of her charge, EEOC issued a right-to-sue letter on August 2, 2019. Def.'s Mot. Ex. 2d Right to Sue ("2d Right to Sue"), ECF No. 5-9. Washington timely filed suit on the basis of the second charge on October 31, 2019, but Judge Kollar-Kotelly dismissed that complaint without prejudice for lack of service. Pl.'s Opp'n at 2–3.

Washington filed her third and final EEOC charge on September 16, 2019; it alleged discrimination, harassment, and a hostile work environment on the basis of her disability, sex, race, and in retaliation for her protected activity. Def.'s Mot. Ex. 3d Charge, ECF No. 5-11 ("3d Charge"). EEOC again terminated the charge and issued another right-to-sue letter on February 13, 2020. Def.'s Mot. Ex. 3d Right to Sue, ECF No. 5-12 ("3d Right to Sue"). Washington brought this suit on the basis of the third EEOC charge on May 26, 2020. *See generally* Compl.

## II.   Analysis

WMATA argues that the Complaint should be dismissed because Washington failed to bring administrative charges within 180 days of the alleged violations and failed to file suit within 90 days of receiving the relevant right-to-sue letter. Def.'s Mem. Supp. Mot. to Dismiss or for

3

Summ. J. at 10–16, ECF 5-1 ("Def.'s Mem.").[1]  Washington responds that her claims are timely because she filed suit within 90 days of receiving the third right-to-sue letter and because the third EEOC charge was filed within 180 days of discrete or continuing actions forming the bases for her claims.  Pl.'s Opp'n at 9–17.

Prior to bringing a civil action under Title VII or the Rehabilitation Act, an employee must exhaust her administrative remedies by filing a charge of discrimination with EEOC within 180 days of the alleged discriminatory incident and file suit within 90 days of final administrative action.  *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998); *McGary v. McHugh*, 49 F. Supp. 3d 83, 86 (D.D.C. 2014) (Title VII claims); *Koch v. White*, 967 F. Supp. 2d 326, 332 (D.D.C. 2013) (Rehabilitation Act claims); 42 U.S.C. § 2000e–16(c).  Courts apply the 90-day time limit strictly and dismiss a suit for missing the deadline by even one day.  *See, e.g.*, *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (citing *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006)); *Harris v. U.S. Dep't of Veterans Affairs*, 126 F.3d 339 (D.C. Cir. 1997) (giving effect to complaint filed one day late only because defendant failed to raise timeliness as affirmative defense); *Smith v. Dalton*, 971 F.Supp. 1, 2–3 (D.D.C. 1997) (suit filed ninety-one days after final agency action is barred).

The Court of Appeals has not addressed how subsequent administrative charges affect the timeliness of charges previously alleged, but

> [c]harges addressed in stale decisions, those issued more than 90 days before filing of suit, may not form the basis of an employee's Title VII lawsuit regardless of subsequent unexpired decisions.  This is especially so when the employee presents an unexpired decision addressing charges that are identical to those addressed in the stale decision. *Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827 (2d Cir. 1986).  Similarly, an unexpired decision can only be the basis of a Title VII suit to the extent that it addresses charges different, if related, to those addressed in stale

---

[1] While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true.  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

4

decisions. *Dowdell v. Sunshine Biscuits, Inc.*, 90 F.R.D. 107, 115–16 (M.D. Ga. 1981); *Bill v. Berkely United Sch. Dist.*, No. 03–4091, 2004 WL 2075447, at *7–8 (N.D. Cal. Sept.16, 2004). This makes sense, because "the time limitations of [Title VII] would be meaningless" if "potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Lo*, 787 F.2d at 827.

*Price v. Greenspan*, 374 F. Supp. 2d 177, 184 (D.D.C. 2005), *aff'd sub nom. Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006).

Washington filed suit on the basis of her second EEOC charge (and the second right-to-sue letter) on October 31, 2019. Pl.'s Opp'n at 2–3. Judge Kollar-Kotelly dismissed that complaint without prejudice on February 3, 2020. *Id.* The Complaint here was filed 113 days later. *See generally* Compl. Any charges contained in her second EEOC charge are untimely because the Complaint here was not filed within 90 days of the second right-to-sue letter (and even if the prior action somehow tolled that period, Washington waited 113 days from the dismissal of the prior action to the filing of this one).

The third EEOC charge did not somehow revive those charges.[2] *Price*, 374 F. Supp. 2d at 184. While Washington argues that her third charge contains new charges "including, but not limited to, actions or events that were recorded in three additional pages of an affidavit," Pl.'s Opp'n at 16, claims arising from those actions are timely only if those actions occurred within 180 days of the EEOC charge (i.e., on or after March 20, 2019), *see* 42 U.S.C. § 2000e-5(e)(1); *Washington*, 160 F.3d at 752. But all of the actions Washington identifies that were included only in her third charge occurred much longer ago, on or around March 1, 2018, April 30, 2018, and between December 16, 2018, and January 6, 2019. Pl.'s Opp'n at 16. And as for Washington's

---

[2] Moreover, this action might be time-barred because it was filed more than 90 days after Washington received her copy of the third right-to-sue letter. *See Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 181 (D.D.C. 2011) (courts presume letter received within three to five days of issuance). The Parties dispute the date on which Washington received the third letter, but the Court need not resolve that dispute because Washington's third EEOC charge did not raise timely claims. *See* discussion *infra* Part II.

contention that her termination claim was newly added to the third charge, that is not the case—as evidenced by the fact that her *second* (albeit amended) charge includes a claim for her "wrongful termination."  2d Charge.

Washington's final argument is that her third EEOC charge includes claims that are timely under the so-called "continuing violation" doctrine, Pl.'s Opp'n at 17, which permits a plaintiff to sue for "the entirety of a series of actions so long as they are interconnected and at least one of them fell within the statutory period," *Barrett v. Chreky*, 634 F. Supp. 2d 33, 36 (D.D.C. 2009) (quoting *Amtrak v. Morgan*, 536 U.S. 101 (2002)).  The continuing violation doctrine typically applies to patterns of behavior which create a hostile work environment and not to "discrete actions" such as termination.  *Id.*  But even if that doctrine applied here, the continuing violation doctrine depends on at least one alleged incident taking place during the statutory period.  *See id.* The only incident alleged in Washington's third EEOC charge that occurred within the statutory period was her termination on April 5, 2019, 3d Charge, and that incident had already been raised in her second charge, 2d Charge.  Washington has therefore failed to timely charge and bring suit on any of her claims.

### III.    Conclusion

The claims contained in Washington's Complaint are untimely and the Court therefore grants WMATA's Motion to Dismiss.  An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  March 31, 2021

CARL J. NICHOLS
United States District Judge